People of the State of Illinois, Apple Lee, by Richard Leonard, versus Christina F. McCallant, Robert Hanover, and Daniel O'Day. And who will be arguing, Mr. Hanover? Myself, Your Honor. Robert Hanover. Okay. Please. May it please the Court. Opposing counsel. My name is Rob Hanover. I'm here on behalf of Appellant Christina Flier, who was the respondent mother at the trial court below. We're here today because the trial court found neglect and subsequently found the mother, Christina Flier, the appellant, unfit at the trial court based upon purported failures on her part to comply with the terms of a safety plan that she had entered into with DCFS. By way of factual background, briefly, we had a situation in September of 2010. There was an alleged domestic disturbance, and as a result of that disturbance, DCFS was involved and entered into a safety plan with the appellant. The safety plan required several things, that the minor was to be placed with the appellant's parents, that the appellant was to stay with her parents and the minor alone without respondent father. The respondent father was not to have unsupervised contact with the minor. The respondent mother, the appellant, was to file an order of protection against the respondent father. The appellant was not to have the minor involved in any contact between herself and the respondent father, and she was also supposed to cooperate with services through the Center for Prevention of Abuse. After having entered into this safety plan, a hotline tip was sent to DCFS informing them that the appellant had apparently, purportedly, left her parents' house with the minor and moved back into what was formerly the shared residence of her and respondent father. Lenny Bruns, an investigator with DCFS, went to that formerly shared residence and found the appellant and the minor child, but did not find the respondent father. He took custody of the minor child, and the next day he filed a petition in the circuit court on behalf of the minor child. The petition alleged the purported domestic disturbance that occurred in September, that the mother, the appellant, had failed to comply with the terms of the safety plan to wit her purported failure to secure an order of protection and her purported failure to maintain a residence in her parents' house with the minor. And also it alleged that there was a criminal record on the part of respondent father. A trial was held on that petition, and the court found that it was not established that the appellant moved out of her parents' house. The evidence did not prove that. The issue where we believe the trial court took a wrong turn is in their finding that the appellant failed to secure or file for an order of protection. The standard of review for the factual situations would be the manifest weight of the evidence. However, as to any contract-based claims that we had argued in our appellate brief and would argue here, the standard we believe would be de novo review of whether the correct law was applied to any interpretation of the safety plan as a contract. Now the safety plan, I reviewed the appellee's brief, and I did want to state for the record that I reviewed our copy of the record, and I believe that the safety plan was actually entered into evidence as Mother's Exhibit 1. It was page 35 of the record. So that would be the contract we spoke about when we had our contract analysis in the appellate brief. The testimony at trial, well, first, with regard to the petition that was filed by the DCFS investigator, Lenny Bruns, he had cited a case, or he had made reference to 10F-864. It's a family case that involved a custody arrangement or an order with regard to the minor child that was at issue in this petition, LW. And his testimony at the hearing further indicated that he had some knowledge as to orders that had been entered in that F case. To wit, his testimony on the record, pages 37 to 39, was as follows. Question, do you know that on October 15th, the appellant, she entered into an agreed order with Terrence Wright, which prohibited either party from harassing, physically abusing, intimidating, or interfering with the personal liberty of the other, and which specified that neither party shall abuse or neglect the minor child, neither party shall enter or remain in or on the presidential property of the other without the other's expressed permission, and that neither party shall enter or remain in or at the other school's place of employment or other places when the other is present? Answer, I was advised of that several days after the fact. Then on 39, question, you knew about the entry of that order when you testified here today during direct examination, didn't you? Answer, I did not know the order existed when I took protective custody. The court then asked, he's asking you, but you knew about it today? Answer, I know about it now, yes. The court, and you knew about it before today? Answer, yes. The court, when you were giving testimony today, you had prior knowledge of that F? Answer, yes, yes, that's correct. I'm sorry, yes, yes, correct. Now the question would be, why would the appellant file for an agreed protective order in an F case as opposed to an OP case for an order of protection? The answer would be actually found in the terms of the safety plan that I laid out earlier. One of the requirements of the safety plan was that she comply with or cooperate with the services through the Center for Prevention of Abuse. And in compliance with that provision of the safety plan, she went to the Center for Prevention of Abuse and she spoke with a Ms. Devin Ross, an advocate with the Center for Prevention of Abuse. And Ms. Ross testified to the discussion that she had with the appellant, particularly, question, did you have a conversation with Ms. Flier about getting the order of protection? Answer, when she came into the office and told me that that's what she was there to file for, I said to her that she could go in the front of a judge, but it did seem more of a family case, and that she could go and file an F case in the circuit clerk's office, but I still told her that she could come back at 2.30 and go in front of a judge. Question, and what is an F case? Answer, a family case. Based on the advice from the advocate at the Center for Prevention of Abuse, which she was supposed to comply with pursuant to the safety plan, she went, hired private counsel, and entered an agreed protective order, which I've already outlined the contents of, in an F case. Despite the evidence that is uncontroverted that she did file, pursuant to the advice received from the Center for Prevention of Abuse, an agreed protective order in the F case, the court ruled that,  She did not seek an order of protection under the Domestic Violence Act, and she should have. At the very least, she was advised to do so even if it wasn't explicitly, or more particularly described in the actual shelter, I'm sorry, safety plan. I think the agency, in good faith, tried to reasonably avoid removal through the safety plan process, and I don't think that the mother followed through. She started the process, and then walked away from the process. I don't find that she violated the safety plan by not living with her parents. I don't think that's been proven. Rather, I find that the order of protection issue is my finding. So the only issue with regard to whether neglect could be found, and subsequently she could be found unfit, was whether she failed to secure an order of protection as contemplated in the safety plan. Now the safety plan did not state that it needed to be in an OP case as opposed to an F case. It did state that she needed to go and cooperate with the Center for Prevention of Abuse, which is exactly what she did. They had said to her, Devin Ross' testimony at the trial said, you know, you could go for an order of protection, but this does seem more like an F case. Subsequently, she filed an F case, an agreed protective order in the F case. And that is really the only thing that she was found, that neglect was found based on her actions. And she was found unfit because of that. And accordingly, we would ask that the court... What's our standard of review? For manifest weight of the evidence, I believe, is the standard on these factual circumstances. The Appley's brief states that, and it is correct, I think, the correct law standard of review. But we do not believe that they've met the burden of proof of preponderance, and we believe that the manifest weight of the evidence... At the trial court, they did not establish by a preponderance. And at this level, we don't even believe that the manifest weight of the evidence is in favor of the decision that was made at the trial court. Accordingly, we would ask that this court reverse the order of the trial court finding neglect based on the failure to secure or file for an order of protection. And we would also ask that the court enter an order declaring that the appellant was not unfit. Do we know in the record, she did not come back at 2.30 or whatever the time was? We do not know if she came back at 2.30. But we do know that she went, and I guess she opted for the other alternative that was offered to her by Devin Ross. She went to and filed an agreed protective order in an F case. So while the record does not indicate that she came back at 2.30, the record does indicate that she chose the alternative option. Are there any questions, Your Honor? I guess not. Thank you very much. Thank you, Mr. Hanover. Mr. Lunder? It pleases the court, counsel. It seems that opposing counsel has focused on the disposition of hearing rather than the neglect proceeding. And just to answer Justice Litton's question, whether the record shows that the respondent came back, I believe the caseworker at the advocacy center testified at the dispossessional hearing that the respondent came in and filled out the paperwork, but she never did return to file the order of protection. He talks about an agreed order in a family case, even assuming, arguendo, that this agreed order complied with what the trial judge and the DCFS wanted, the respondent never complied with the order. She continued to associate with the father and her abuser. She was in a domestic violent relationship, and she was not able to protect herself nor protect the child. That's why the trial judge found that the respondent was unfit at the dispositional hearing. He alludes to the fact that the respondent was supposed to file for the order of protection. Notwithstanding that, she was also supposed to not have any contact with the father and not have the father have any contact with the child and stay with her parents in Bartonville rather than the Peoria address where the father was staying. He correctly states that the DCFS investigator went to the parents' house in Bartonville and the respondent was not there. He went to the Peoria address. He did find the respondent and the child there. That was the father's residence, even though he wasn't home. She did not comply with her agreed order in the family case, and she fails to understand that the problem is the domestic violence between her and the father. The caseworker also testified that the respondent had been dishonest with the caseworker. She discovered on the respondent's Facebook page that the respondent was having another child with the same father, even though she was supposed to not have any contact with the father. The caseworker confronted the respondent, Is there anything that you need to tell me? The respondent says no. Then the caseworker confronted the respondent with these printouts of the Facebook page stating that she and the father, her abuser, was having another child. That is the reason that the trial judge found the respondent unfit, not simply because the respondent failed to get an order of protection. It's because she failed to comply with any order that she had received in the family case. I believe all the other arguments are fully briefed. Unless you have any questions, I ask that you find that the trial judge's order finding the respondent unfit was proper and affirmed that order. Let me be clear, you're saying the adjudication of neglect was based on, the opposing counsel was saying it was based on not securing an order of protection, but you're saying there was more there? I believe he was speaking to the dispositional hearing. No, I'm looking at the adjudication order. Yes, you're speaking about the adjudication order? So what was... The reason that the child was adjudicated neglected in the petition, there were three allegations, the father had come home drunk, he had struck the mother in the mouth, he had... We know all of that. Yes. That's ground that's been filed. Okay. We're looking for your statements. It seems to me the adjudication was they found proven she did not get an OP, which she was allegedly in the safety plan was supposed to do, but says count something not proven stating that mother did not live with parents. So what was the basis for the trial court's adjudication? The basis was the... I'm looking at the order. At the neglect order. Yes, adjudication order. Adjudication order, yes. The basis for that finding was the facts in the petition that the child was neglected due to an injurious environment because of this domestic violence incident on September 15th. Instead of filing the neglect petition at that time, a safety plan was drafted, and she was supposed to abide by the safety plan and also... Right, all that's about ground again. What did the judge find in the adjudication order? I believe he found that the people proved the incidents on September 15th that the child was neglected because the respondent did not file the order of protection, and he found that she did not abide by the safety plan, but he did find that the respondent was living with her parents in Bartendale. I believe that was the basis of his finding on the adjudication of neglect. It says it was not proven. Excuse me? It says count B was not proven. That was the disposition order? This was the adjudication order. Yes, the adjudication order. I don't recall. I believe that he found that that was regarding the dispositional order, correct? Well, the dispositional order says... I'm sorry. That was requiring for her to get an order of protection, if I'm not mistaken. He found partially that the people have proved part B. He found that the respondent failed to obtain the dispositional order, but he found that the people did not prove that the respondent had moved back in with the child into the father's residence. He found that the respondent complied with the safety plan by staying and living in Bartendale with her parents. Well, isn't that really the... I have a hard time reading the adjudication order because we've got count B, count B. Yes. But apparently if one looks at the two together, it seems like the closing counsel summary was correct, that the basis for the adjudication of neglect was not complying with the safety order, and only one asked that, that being failure to get an order of protection. Yes. All this other stuff would be somewhat irrelevant if we don't buy the judge's own findings. Well, he found that all of the counts were proven of the allegations except that the mother had complied with the safety plan portion where she was supposed to live with her parents. Part B, he found that she did not file for the order of protection. And also the other allegations that this domestic violence dispute happened on September 15th and also the father's criminal record. I believe that was the basis for his neglect adjudication. How can that even be logical? I mean, we have a finding here that safety plan was not complied with. All that other stuff happened before. Yes. We have a safety plan. You comply with the safety plan, and there's an argument that the respondent did not comply with the safety plan, and it was found only that she didn't comply because she didn't get an order of protection. Is that a fair summary? That's a fair summary. Okay, so what's so special about an order of protection as opposed to an agreed order that allegedly makes similar findings in a family law case? Why is an order of protection so much superior? Well, I'm not sure what the trial judge was thinking. Well, that's clear when we look at the order. Yeah, but my surmise would be that she did not get the order of protection because that was part of the safety plan. She did, I guess, get an agreed order in the family case, but she still did not comply with that order either. So if the safety plan says you've got to drive a red car and she can only find a green one, she's in violation? No, I don't think that would be too extreme an example. I don't think there was much evidence in the record about the agreed order of protection as far as I remember, but, yes, that was the trial judge's main finding, that she did not comply by getting the order of protection. What are the differences? I think what Justice Holder is asking is what are the differences? Are there substantive differences or is it mostly just a procedural difference, as your colleagues would say, or is there a substantive difference? Is there some meat in there that we're missing? No, I believe it would be just a procedural difference.  It would be effective just as an order of protection. I'm not sure what the difference would be. Well, to enforce it, she would have to enforce it by... She would have to call the police. Well, or would she call her lawyer at that point? Yeah, or she would have to follow the agreed order. So I guess the answer to your question... In an OP, she would have to call the police. Yes. But in the injunctive relief that she got under the F case, what would she do? Well, to tell you the truth, I'm not really sure what she would do. Fair answer. Yeah, I guess she would have to call the police if the father violated the agreed order. But in this case, it's clear that the respondent violated the agreed order by her actions of going to the father's residence with the child, even though the father was not there at the time. Two minutes. DCFS investigator found that the father was not there. So the answer to your question would be, I guess there are similar ways to go about it, but DCFS asked that she get an order of protection, and that wasn't agreed upon term of the safety plan, and she failed to do that. Instead, she took her own action and went and filed the family law case, I guess at the suggestion of the court advocate. Isn't it troubling, or is it troubling? I don't know. When you have an order like this that says neglect because the safety plan wasn't followed, only in respect to not getting an order of protection, and the record shows there's an agreed order entered in the family law case, but all of this other stuff that you're saying, well, she was found by the investigator to be at the residence of the father, the father wasn't present, all of this sort of stuff, I don't see anything referenced in here by the trial court as to whether that has any meaning, merit, or whatever. Yes. So, I mean, what are we as a court of review supposed to limit ourselves to reviewing? Well, whether the trial judge's finding of neglect was against the manifest way of the evidence, we have to also consider the other allegations in the neglect petition, the domestic violence incident that occurred, and also the father's criminal convictions. Those things are, the domestic violence incident led to the safety plan. Yes. The father's convictions presumably preceded even the domestic violence incident. Yes. But at the adjudication of neglect hearing, the issue is whether the child was neglected, not whether the parents were neglectful. And considering everything in the neglect petition, the trial judge found that the child was neglected due to an interest in violence. Counsel's back. Mr. Leonard, I have two quick questions. Does the state contend that the safety plan required a domestic violence order gotten in one particular form? The safety plan was, yes, that is our position. Your position is that she was required to get a domestic violence order under the Domestic Violence Act and not under a family court proceeding. Yes. That was specified in it. Yes, the agreed upon safety plan between the DCFS and the respondent, and she failed to do that. She chose to ignore that and go ahead and file for an agreed order in a family case. My second question then is, does the state dispute that she got advice on how to proceed on this from the Center for Prevention of Abuse? Her testimony was that the court advocate said that this was more of a family case, and it appears, if you accept her testimony as true, that she did get advice, perhaps not the best advice. But the safety plan seemed to be clear, and the court advocate may have been erroneously giving her information. But was she told to get information from that person? Was she told to get information? Well, yes, she was ordered to go to this advocacy center and fill out the papers for the order of protection, and there was some discussion about a family case. The mother then failed to return. I guess she proceeded to go the route of a family law case. Thank you. And thank you, Mr. Leonard. Now, Mr. O'Day, you were going to do the rebuttal? Yes, Your Honor. Your Honor, please. Court, please, this is counsel. The safety plan, I believe, is in the record as Mother's Exhibit No. 1, and I think what Mr. Hanauer was talking about in terms of the standard of review is that when it comes to reviewing this contract, which I hope is in the record as Mother's Exhibit 1, it's in our copy of the record as Mother's Exhibit 1, that when you're reviewing this contract, what we call a contract, that it's a de novo standard of review because you can look to see what's in there, and the trial court's in no better position than you are in to look at this piece of paper and what's on there. And on this piece of paper and what's on there, it says things like that she's not to have the baby involved in contact between her and Terrence. It doesn't say she's not supposed to have contact with Terrence and different things like that, but the most important thing that is on this piece of paper that I think you are in the same position as the trial court to look at, because this is the contract that everybody signed, the safety plan, is that it says that she's to cooperate with services through prevention of abuse, which I think everybody understands is the Center for Prevention of Abuse. And she went there, and she wasn't the only one who testified on how she was directed. The lady from the Center for Prevention of Abuse came in and testified that she told her that this is more like a family case, and that she could come back at 2.30, but it's more like a family case. So what Ms. Flyer did, my client, is she got an attorney, which was us, and had us then try to get an order of protection, if you will, in the family case, as had been suggested by the Center for Prevention of Abuse. We got Terrence to agree to the entry of the order, and we had an agreed order entered in the family case, which there was no specification on the safety plan that it be an OE case, that it be if they had been married in a D case. Since they weren't married, it was an F case, and so on. It didn't specify what kind of case. Now if you look at the adjudication order, in the adjudication order it says you did not get an OP under Center of Prevention of Abuse under the Domestic Violence Act, is what it says when you go outside. And that wasn't on the safety plan. So in answer to your question, the safety plan says order of protection, and on the first page of the safety plan, and then if you turn to the third page of the safety plan, there's a question that says what must happen in order to terminate the plan, and it says an order of protection would need to be obtained. So once again, the second time in this, it doesn't say anything about it's got to be an OP case. There ought to be a certain dignity to it. Are you saying that getting an order of protection is not, that it's its own animal, that it's equivalent to the F case injunction? Yeah, I think it's an order of protection, whether it's in a D case, which is a divorce, an OP case, or an F case, it's still an order of protection. Isn't that language used for orders under its own act, realistically? No, I think the words order of protection, you see, for example, filings of OP cases that in different circuits then get assigned to the same judge that's got the D case, and then maybe the parties agree that the order's entered in the D case, and the OP case is dropped. I mean, you see there's quite a bit of movement between F cases, D cases, and OP cases, and I think there's a certain dignity that ought to attach to a court order, regardless of what the case number is that the clerk's office assigns to it, based on what I think probably the administrative office or somebody tells them to assign to it, that just because you call a cop for one kind of case, a court order, or you go to the court, depending on it's another kind of court order, the court orders are what's important, the dignity of a court order, and this order, in the F case, was entitled to as much dignity as an OP order. But certainly enforcement, the different kinds of enforcement aren't insignificant. Well, I think they, in terms of whether something's an order or not, that they are procedural, not substantive. But, I mean, if you can call a policeman and he comes and adjusts the situation, whatever that would require in any situation, it's different than calling your lawyer and saying, you know, I need some follow-up with my order of protection here, and would you file a rule against the perpetrator, whatever. I mean, there's different kinds of enforcement. They're different orders, really, are they not? I agree that procedurally, in the case of an OP, the police usually are the first ones to get involved, and then later on, possibly the state's attorney looks at it, possibly a court looks at it. Certainly in the OP case, the court looks at it to see if there was a violation. The police and the state's attorney look at it in terms of whether a crime should be charged. But in the F case, or in a D case, as the case may be, the court would get involved in just the same way as an OP case, to decide whether there was contempt of court in violating the order. Counsel, that's one minute. I have a question, since we are at the adjudication order. What on the left side counts something in entirety, counts C in entirety? What does that refer to? What is trying to be articulated there, in your view, by the trial court? I think it says A in its entirety, which I believe refers to what Terrence's actions were, that the court did find that A had been proven. And then C, I believe, was her not getting the... I'm sorry, B was that she had not gotten the order of protection. Well, I can figure out B, but he's got something C in entirety there. Yeah, I'm not sure what that was. Can I... Yeah. C is the criminal record. Sorry, that had been proven in its entirety. And we don't disagree with that. Yeah, I know, but I don't know how anybody could figure that out looking at the cold order, what it means. Well, Mr. Hannon submitted it in November, and he figured it out. I agree with him, he figured it out. Well, my other question is, is that we're looking at the safety plan. What was the consideration for entering in a safety plan by your client? I'm sure it was to... Because who are the parties to the contract, first of all? Well, I think there's a whole pheasant of signatures on this safety plan. Yeah, but let's simplify it. Who's the parties? I think it's probably DCFS. DCFS and your client. Right. Okay, and what consideration was there for entering into this plan? If it's a contract. Well, I'm sure DCFS was offering certain services and things like that that they were going to get involved with. Would it be arguably forbearance of pursuing an adjudication of neglect? You know, you would think that, but I think here that they did say that there was going to be a petition filed, that the case would be referred for first appearance in juvenile court. And so I'm not sure exactly... I'm not sure why people sign these things with DCFS, to be honest with you. But apparently it is a way to get processes going and things like that, get people to maybe go get orders of protection and agree to certain things for the time being. Is it unreasonable to say that when knowing the power of DCFS that you do things, put yourself in a favorable light so that there will be forbearance or consideration or they'll go easier on you? I would think that's probably what goes through somebody's mind when they sign one of these. But again, I think you probably then are looking at what they say. And then when they say to go cooperate with the Center for Prevention of Abuse and you go do that, and then they tell you, well, this would be more like an F case, I think you're probably, in your mind, complying. Well, thank you all for your arguments today. We do appreciate it. We will take this matter under advisement, get back to you with a written disposition within a short day.